1
2
3
4
5
6                    IN THE UNITED STATES DISTRICT COURT
7                      FOR THE DISTRICT OF ARIZONA
8
Bryan Barten, a married man,              )    No. CIV 12-399-TUC-CKJ (LAB)
9                                          )
          Plaintiff,                       )    **REPORT AND RECOMMENDATION**
10                                         )
vs.                                        )
11                                         )
                                           )
12  State Farm Mutual Automobile Insurance )
    Company, a foreign corporation doing   )
13  business in Arizona,                   )
                                           )
14            Defendant.                    )
                                           )
15  _____)
16

17        Pending before the court are the defendant's three motions for partial summary

18  judgment: (1) Defendant's Motion for Partial Summary Judgment Re: Contract and Bad-

19  Faith Claims  (Doc. 108),  (2) Defendant's Motion for Partial Summary Judgment on

20  Plaintiff's Claims Re: Sixteen Hours Per Day of Attendant Care  (Doc. 186),  and (3)

21  Defendant's Motion for Partial Summary Judgment Re: Alleged "Hurdles" to Plaintiff's

22  Recovery of Benefits and Plaintiff's Claims for Bad Faith and Punitive Damages (Doc. 188).

23        The plaintiff in this action, Bryan Barten, was covered by a personal injury protection

24  (PIP) policy issued by the defendant, State Farm, when he was involved in an automobile

25  accident and rendered a quadriplegic.  Barten claims State Farm breached this policy by

26  failing to pay benefits due and failing to inform him of the extent of his benefits.

27        First, State Farm moves that the contract and bad faith claims should be construed in

28  accordance with Michigan law.  State Farm also moves that the court should limit the scope

1   of the action pursuant to the one-year-back damages rule or pursuant to the appropriate
2   statute of limitations.

3        State Farm moves for summary judgment on Barten's claim that State Farm
4   improperly failed to pay for 16 hours per day of attendant care.  State Farm further moves
5   for summary judgment as to several "hurdles" that Barten asserts were raised by State Farm
6   to unjustly deny benefits.  Finally, State Farm argues the evidence is insufficient to support
7   Barten's bad faith claim or his claim to punitive damages.

8        The case has been referred to Magistrate Judge Bowman for all pretrial matters
9   pursuant to the local Rules of Practice.  LRCiv 72.2.  A hearing on the motion was held on
10  March 11, 2014.  At the hearing, the court was informed that the parties have reached a
11  settlement regarding Barten's claim for car modifications and home modifications.

12

13       <u>Background</u>

14       In April of 1995, Barten was involved in an automobile accident in Lansing, Michigan
15  and rendered a quadriplegic.  (Doc. 169-1, p. 1)  At the time of his injury, Barten was
16  covered by his father's personal injury protection (PIP) policy pursuant to the Michigan No-
17  Fault Act, which was issued by the defendant, State Farm.  *Id.*, p. 2.

18       Immediately after the accident, Barten was represented by attorney George T. Sinas,
19  who applied for PIP benefits on Barten's behalf.  (Doc. 169-1, p. 4)  In a letter sent to State
20  Farm, Sinas explained that his office would keep the insurer informed as to Barten's course
21  of treatment and would "be in contact with your office concerning attendant care,
22  replacement services, home accommodations, etc." *Id.*, p. 5.  Barten believes Sinas's office
23  erroneously applied for certain benefits such as transfers and shopping assistance under the
24  "replacement services" benefit rather than the "attendant care services" benefit. (Doc. 169-1,
25  p. 4)  The replacement services benefit is limited to three years.  *Id.*  State Farm filed a notice
26  pursuant to A.R.S. § 12-2506(B) identifying Sinas as a nonparty at fault.  (Doc. 30)

27

28

1    After his accident, Barten moved to Arizona to escape the harsh winters in Michigan.

2 For a time, he was assisted by his girlfriend. (Doc. 169-1, pp. 19-20)  State Farm paid her

3 for her services including shopping and transferring Barton to and from his wheelchair.

4 (Doc. 169-1, p. 20)

5    When his girlfriend moved away in 1997, Barton was at a loss as to how he would be

6 able to cope with his day-to-day needs. *Id*., pp. 19-21.   He had problems opening bottles,

7 getting dressed, changing his linens, taking out the garbage, and getting back into his

8 wheelchair after a fall. (Doc. 169-1, pp 19-20) He contacted State Farm and asked if they

9 would pay for someone else to do the jobs she formerly performed. *Id*.  He explained he

10 needed help with "everything." *Id*., p. 21.  He gave the examples "shopping" and "cleaning,"

11 but he was told those things are not covered. *Id*., p. 21; (Doc. 169-3, pp. 27-29) He inferred

12 that all benefits other than medical bills had ended as of April 21, 1998. *Id*., p. 21; (Doc.

13 169-3, pp. 27-29)

14    Barton now believes State Farm's description of the limited scope of his benefits was

15 erroneous.   He thinks he was given this incorrect information because his girlfriend's

16 services were improperly paid under the "replacement services" benefit.  The "replacement

17 services" benefit only lasts for a limited period of time after the accident. (Doc. 169-3,  pp.

18 28-29)  The "attendant care" benefit, however, is not so limited.  *See* (Doc. 347, p. 42)

19 (arguing that State Farm's documents indicate shopping is covered under attendant care)

20    In December of 2009, Barten was fitted with a peripherally inserted central catheter

21 (PICC) intravenous line to treat an infection. (Doc. 169-1, p. 24) Barton called State Farm

22 and explained he was unable to maintain the line and use it to administer his antibiotics. *Id*.

23 When State Farm employee Ms. Parker asked if three hours of attendant care would help

24 him, Barton gratefully accepted. *Id*.  Barten obtained from his physician, Theodore Brysacz,

25 a prescription for three hours of attendant care. (Doc. 186, p. 4) Under this "attendant care"

26 benefit, State Farm paid for feeding, bathing, toileting, dressing, undressing, and transferring.

27 (Doc. 186, p. 4)

28

1      In the Fall of 2011, Barten met Andy Zimmer in Las Vegas.  (Doc. 169-1, p. 18)

2 Zimmer had a similar injury and was also receiving benefits from a PIP Michigan no-fault

3 policy.  *Id.*  Barten credits Zimmer with informing him of the extent of his PIP benefits.  *Id.*,

4 p. 19.

5      Shortly afterwards, Barten requested State Farm provide 16 hours per day of attendant

6 care.  (Doc. 169-1, p. 18)   Barten obtained from his physician, Theodore Brysacz, a

7 prescription for 16 hours of attendant care.  (Doc. 186, p. 5)

8      State Farm refused to pay for 16 hours of attendant care because Barten's medical

9 condition had not changed since the time he claimed three hours of care.  (Doc. 169-1, p. 25)

10 Barten argues he did not ask for three hours of care because he believed it was the amount

11 he needed, but rather accepted that amount because Ms. Parker told him State Farm would

12 pay for that amount of care.  (Doc. 169-1, p. 12)

13      On April 13, 2012, Barten filed this action in Pima County Superior Court claiming

14 breach of contract, insurance bad faith, and violation of the Medicare Second Payer Act, 42

15 U.S.C. § 1395y(b)(3)(A).  (Doc. 1-3, pp. 2-10)  It was removed by the defendant on May 22,

16 2012.  (Doc. 1)   The medicare claim was dismissed by stipulation.  (Doc. 143)

17      Barten claims State Farm breached its duty to disclose all the benefits available under

18 his policy.  (Doc. 1-3, pp. 2-10)  He further claims State Farm has not paid all benefits due.

19 *Id.*  For example, State Farm is only paying for three hours of attendant care per day instead

20 of the 16 hours recommended by Barten's physician.  *Id.*

21

22      <u>Standard of Review:  Summary Judgment</u>

23      Summary judgment is appropriate only "if the movant shows that there is no genuine

24 dispute as to any material fact and the movant is entitled to judgment as a matter of law."

25 Fed. R. Civ. P. 56(a).  There is just such a dispute "if the evidence is such that a reasonable

26 jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477

27 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986).

28

1    The initial burden rests on the moving party to point out the absence of any genuine

2    issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553

3    (1986). If the moving party has the burden of proof at trial, that party carries its initial

4    burden by presenting evidence showing no reasonable trier of fact could find for the

5    nonmoving party. *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *U. S. v.*

6    *Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991). If the moving party

7    does not have the burden of proof at trial, that party carries its initial burden either by

8    presenting evidence negating an essential element of the nonmoving party's claim or

9    demonstrating the nonmoving party cannot meet its burden at trial. *Celotex Corp. v. Catrett*,

10   477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986); *Nissan Fire & Marine Insurance v.*

11   *Fritz*, 210 F.3d 1099 (9th Cir. 2000).

12   Once satisfied, the burden shifts to the nonmovant to demonstrate through production

13   of probative evidence that an issue of fact remains to be tried. *Celotex,* 477 U.S. at 324, 106

14   S.Ct. at 2553. Summary judgment is appropriate "against a party who fails to make a

15   showing sufficient to establish the existence of an element essential to the party's case, and

16   on which that party will bear the burden of proof at trial." *Thomas v. Douglas*, 877 F.2d

17   1428, 1430 (9th Cir. 1989).

18   When considering a motion for summary judgment, the court is not to make credibility

19   determinations or weigh conflicting evidence. *Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir.

20   1990). Instead, the court should draw all inferences in the light most favorable to the

21   nonmoving party. *Id.* That said, it remains the job of the nonmoving party "to identify with

22   reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*,

23   91 F.3d 1275, 1279 (9th Cir. 1996).

24

25   (1) Defendant's Motion for Partial Summary Judgment Re: Contract and Bad-Faith
     Claims (Doc. 108)

26

27   *Contract Claim:  Choice of Law*

28

1    State Farm argues that Barten's breach of contract claim should be decided pursuant

2    to Michigan law.  Barten agrees.  This aspect of the motion is uncontested and should be

3    granted.  *See* (Doc. 347, pp. 7, 43)

4

5    *Contract Claim:  One-Year-Back Limitation on Damages*

6    State Farm argues Barten's contract recovery is limited by the one-year-back rule,

7    M.C.L. § 500.3145(1), which limits recovery to losses incurred within one year of the filing

8    of the action.   The court agrees.

9    The one-year-back rule limits the damages that a potential plaintiff may recover in an

10   action for recovery of personal protection insurance benefits.  Simply put, "the claimant may

11   not recover benefits for any portion of the loss incurred more than 1 year before the date on

12   which the action was commenced."  M.C.L. § 500.3145(1).

13   "The Michigan Supreme Court has confirmed that this is a damages limitation

14   provision, and not a statute of limitations."  *Buntea v. State Farm Mut. Auto Ins. Co.*,  467

15   F.Supp.2d 740, 749 (E.D.Mich. 2006).  "Therefore, traditional judicial tolling doctrines . .

16   . such as insanity or infancy of a party, do not apply to the one year back rule."  *Id*.  The

17   court, nevertheless, retains equitable authority to extend the recovery period in "unusual

18   circumstances such as fraud or mutual mistake."  *Id*.

19   Barten argues summary judgment on this issue is not appropriate because there is

20   evidence from which a reasonable trier of fact could find equitable estoppel.  (Doc. 169, p.

21   6)

22   "The principle of estoppel is an equitable defense that prevents one party to a contract

23   from enforcing  a specific provision contained in the contract." *City of Grosse Pointe Park*

24   *v. Michigan Municipal Liability and Property Pool*,  473 Mich. 188, 203-204, 702 N.W.2d

25   106, 116 (2005).  "For equitable estoppel to apply, [Barten] must establish that (1) [State

26   Farm's] acts or representations induced him to believe [some fact about his coverage], (2)

27   [Barten] justifiably relied on this belief, and (3) [Barten] was prejudiced as a result of [his]

28

1   reliance. . . ." *Id.*  Barten argues first that equitable estoppel could be found from State

2   Farm's failure to explain his benefits.

3        "Silence or inaction may form the basis for an equitable estoppel only where the silent

4   party had a duty or obligation to speak or take action." *Conagra, Inc. v. Farmers State Bank,*

5   237 Mich.App. 109, 141, 602 N.W.2d 390, 406 (App. 1999).  Here, however, there is no

6   evidence that State Farm had such a duty to explain under Michigan law.  *See Schwein v.*

7   *State Farm Mut. Auto. Ins. Co.*, 2013 WL 4605892, 4 (E.D.Mich. 2013)  ("Indeed, as the

8   court acknowledged in *Paquette*, there is no statutory obligation to explain benefits under the

9   No Fault Act.").

10       In the alternative, Barton alludes to the fact that State Farm had an internal policy of

11   explaining benefits.  He does not, however, provide any evidence that Barten was aware of

12   this policy and reasonably relied on it.

13       Barten states in a conclusory fashion that estoppel could be found from State Farm's

14   affirmative misrepresentation of the extent of his benefits.  He may be referring to evidence

15   that he contacted State Farm when his girlfriend moved away and asked if he could get

16   someone to help him with the tasks that she previously performed.  (Doc. 169-1, pp. 19-20)

17   He was told, however, that those things are not covered, and he inferred that all benefits other

18   than medical bills had ended as of April 21, 1998.  *Id*., p. 21;  (Doc. 169-3, pp. 27-29)

19       In order for this statement to trigger equitable estoppel, however, Barton must show

20   that it induced him to believe falsely that certain benefits were not covered and that he was

21   reasonable in his belief.  The Michigan Supreme Court, however, has stated that reliance on

22   an insurer's statement that contradicts the terms of the policy cannot induce reasonable

23   reliance because the insured is presumed to have read the terms of the insurance policy.

24   *Cooper v. Auto Club Ins. Ass'n*,  481 Mich. 399, 415, 751 N.W.2d 443, 451-52 (2008); *see,*

25   *e.g., Brown v. Travelers Indem. Co.* , 2011 WL 41911, 7 (M.D.Fla. 2011) (One-year-back

26   rule applied even where the defendant "sought to and did mislead Plaintiff as to the nature

27

28                                          - 7 -

1    and scope of attendant care benefits under the no-fault law" because any reliance on the

2    defendant's communications "appears unjustified as a matter of law.").

3        Barten's contract recovery is limited by the one-year-back rule, M.C.L. § 500.3145(1).

4    State Farm is entitled to partial summary judgment on this issue.

5

6        *Bad Faith Claim*:  *Choice of Law*

7        State Farm argues Barten's bad faith claim must be dismissed because the court

8    should apply Michigan law, and Michigan does not recognize an action for insurer bad faith.

9    The court finds to the contrary that this claim should be construed in accordance with

10   Arizona law.

11       A federal court sitting in diversity applies the choice of law rules of the forum state.

12   *Patton v. Cox*,  276 F.3d 493, 495 (9th Cir. 2002).  "Arizona courts follow the Restatement

13   (Second) of Conflict of Laws (hereinafter 'Restatement') as a guide in choice of law

14   questions."  *Id.* (Punctuation modified)  Where the plaintiff brings a bad faith insurance

15   claim, the court should consider Restatement § 145, which is applicable to tort issues in

16   general, and Restatement § 146, which is specifically directed toward personal injury actions.

17   *Bates v. Superior Court of State of Ariz., In and For Maricopa County*,  156 Ariz. 46, 49, 749

18   P.2d 1367, 1370 (1988).

19       Restatement § 145 "provides that courts are to resolve tort issues under the law of the

20   state having the most significant relationship to both the occurrence and the parties with

21   respect to any particular question."  *Id.*  The following factors are ordinarily the most

22   important:

23       1. The place where the injury occurred;

24       2. The place where the conduct causing the injury occurred;

25       3. The domicile, residence, nationality, place of incorporation and place of
         business of the parties;

26

         4. The place where the relationship, if any, between the parties is centered.

27   *Id.*

28                                      - 8 -

1    In this case, the injury occurred in Arizona where the plaintiff experienced mental,

2    physical, and financial harm as a result of State Farm's alleged improper failure to provide

3    benefits. *Bates*, 156 Ariz. at 49, 749 P.2d at 1370. Barten argues State Farm violated the

4    covenant of good faith and fair dealing in a number of ways, but his strongest argument is

5    that State Farm gave him misleading information about the extent of his benefits. This

6    conversation took place when Barten was living in Arizona.

7    The conduct causing the injury occurred mainly in Michigan where Barten's claims

8    were handled. (Doc. 108-1, p. 3)

9    As to factor 3, Barten is domiciled in Arizona, while State Farm is domiciled in

10   Illinois where it is incorporated and has its principal place of business. (Doc. 108, p. 13)

11   Arizona courts, however, give more weight to the residence of the tort victim where, as here,

12   the injury is to the plaintiff's personal interests. *Bates*, 156 Ariz. at 50, 749 P.2d at 1371.

13   Factor 4 asks where the relationship between the parties is centered. The relationship

14   between the parties here is the relationship between an insurer and an insured. One could

15   therefore find the relationship "centered" between their two domiciles, Arizona and Illinois.

16   Arizona is where Barten incurred medical expenses and received benefits. Illinois is the

17   home of the insurer, the place where Barten directed his claim requests, and the place from

18   which State Farm communicated to him. (Doc. 108-2, pp. 91-97, 103, 105-110)

19   Having examined these factors, a court might be tempted to compare in a

20   straightforward way the number of factors favoring each alternative state. The court's

21   inquiry, however, "is qualitative, not quantitative." *Bates*, 156 Ariz. at 49, 749 P.2d at 1370.

22   "The court must evaluate the contacts according to their relative importance with respect to

23   the particular issue." *Id*.

24   The Restatement gives the following specific qualitative guideline for personal injury

25   cases:

26       In an action for a personal injury, the local law of the state where the injury
         occurred determines the rights and liabilities of the parties, unless, with respect
27       to the particular issue, some other state has a more significant relationship

28                                          - 9 -

under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement § 146.  The Restatement § 6 gives the following factors relevant to the choice of law determination:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Most of these factors are neutral and do not provide a reason for overriding the general rule of Restatement § 146.  *See Bates*, 156 Ariz. at 50, 749 P.2d at 1371.  Factor (d), however, "the protection of justified expectations," bears closer analysis.  State Farm argues that Michigan law should apply because the Michigan No-Fault Act was enacted in reliance on Michigan's prohibition on bad faith claims.  (Doc. 108, p. 15); (Doc. 347, p. 19)  It would be unfair to require insurance companies to pay No-Fault benefits without enforcing the prohibition against bad faith claims which acts as an economic offset.  *Id.*, *see also Bates*, 156 Ariz. at 50, 749 P.2d at 1371.

The cases cited by State Farm, however, do not explicitly state the No-Fault Act was created in reliance on a prohibition against bad faith claims.  In fact, Michigan recognized a related cause of action, the Michigan Consumer Protection Act, which permitted non-contract causes of action to be brought alongside a No-Fault contract claim.  *See Buntea v. State Farm Mut. Auto Ins. Co.*,  467 F.Supp.2d 740, 743-45 (E.D.Mich. 2006).

Moreover, national insurers such as State Farm know that insureds sometimes relocate and know "that it might be required to perform its obligations as an insurer in any state in the union."  *Bates*, 156 Ariz. at 51, 749 P.2d at 1372.  "It could not justifiably expect that every

1  aspect of its conduct would be governed by the law of the state in which the contract

2  originally was made." *Id.*

3          Because no other state has "a more significant relationship under the principles stated

4  in § 6 to the occurrence and the parties," the general rule should apply, and the law of

5  Arizona should be applied to Barten's bad faith claim.  Restatement § 146, *see, e.g.*, *Bates*,

6  156 Ariz. at 47-48, 749 P.2d at 1368-69 (Arizona law applied to bad faith insurance claim

7  where the insured was covered by a Michigan no-fault policy, was a Michigan resident when

8  the accident occurred, began receiving benefits in Michigan, but later moved to Arizona

9  where benefits were eventually terminated.).

10

11          *Bad Faith Claim: Statute of Limitations*

12          Barton's bad faith claim should be construed in accordance with Arizona law.

13  Consequently, Arizona's two-year tort statute of limitations applies to his claim.

14  Restatement § 142(a);  Ariz.Rev.Stat. § 12-542.

15          State Farm argues the one-year-back damages rule should apply to Barton's bad faith

16  claim.  The one-year-back rule, however, only applies to "[a]n action for recovery of personal

17  protection insurance benefits payable under this chapter . . . ."  *Cooper v. Auto Club Ins.*

18  *Ass'n*,  481 Mich. 399, 406, 751 N.W.2d 443, 447 (2008).  Barten's bad faith claim seeks

19  damages apart from those to which he is entitled under the Michigan statute.  The one-year-

20  back rule does not apply.  *See, e.g., Basirico v. State Farm Mut. Auto. Ins. Co.*,  2008 WL

21  2446906, 7 (E.D.Mich. 2008)  (One-year-back rule "does not limit the recovery of

22  non-contractual damages that do not represent lost no-fault benefits.").

23          Barton argues this court should apply the six-year statute of limitations that applies

24  to the Michigan Consumer Protection Act. (Doc. 169, p. 12)  Barton did not, however, bring

25  an action pursuant to this statute.

26

27

28                                              - 11 -

1   Barton argues in the alternative that the discovery rule tolls the Arizona statute of

2   limitations.  The court concludes that application of the discovery rule should be left to the

3   trier of fact.

4   "[U]nder the common law discovery rule a cause of action does not accrue until the

5   plaintiff knows or with reasonable diligence should know the facts underlying the cause."

6   *Manterola v. Farmers Ins. Exchange*, 200 Ariz. 572, 576, 30 P.3d 639, 643 (App. 2001).

7   Here, Barton claims State Farm acted in bad faith by denying him PIP benefits.

8   "Arizona law implies a covenant of good faith and fair dealing in every contract."

9   *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395*

10  *Pension Trust Fund*,  201 Ariz. 474, 490, 38 P.3d 12, 28 (2002).  This covenant "prohibits

11  a party from doing anything to prevent other parties to the contract from receiving the

12  benefits and entitlements of the agreement." *Id.*  The covenant is breached if "one party

13  exercises discretion retained or unforeclosed under a contract in such a way as to deny the

14  other a reasonably expected benefit of the bargain." *Id.*  at 492, 30.

15  If the plaintiff claims the defendant improperly denied a particular claim, the plaintiff

16  "must show the absence of a reasonable basis for denying benefits and that the insurance

17  company either knew or recklessly disregarded the fact that it did not have a reasonable basis

18  for denying benefits." *Madsen v. Fortis Benefits Ins. Co.*,  2006 WL 3771803, 9 (D.Ariz.

19  2006).

20  Because the discovery rule mitigates the harshness of statutory limitations by

21  equitably considering the facts of each case, the question of when a plaintiff discovered or

22  should have discovered facts giving rise to a claim is "usually and necessarily" left to the

23  jury. *Doe v. Roe*, 191 Ariz. 313, 323, 955 P.2d 951, 961 (1998).

24  Barten's complaint was originally filed on April 13, 2012.  (Doc. 1, p. 1)  State Farm

25  argues the two-year statute of limitations precludes any claims that accrued more than two

26  years before.  Assuming the discovery rule applies here, State Farm argues all of Barten's

27  bad faith claims are time-barred except for his claim for sixteen hours of attendant care.

28

1    State Farm argues specifically that Barton may not assert claims arising out of (1) his

2  need for attendant care prior to his request for 16 hours, (2) his application for a handicap-

3  accessible van in 2005-2006, (3) State Farm's practice of requiring receipts and prescriptions,

4  (4) State Farm's insistence that Barten's claims for payment be coordinated with his private

5  health insurer, (5) State Farm's denial of a Cialis prescription, and (6) State Farm's payments

6  limited to "usual and customary" charges.  Even if the discovery rule were applied, State

7  Farm argues, these claims accrued more than two years before the complaint was filed.

8    Barten acknowledges that three of these issues[1] are not part of his bad faith claim –

9  the van issue, the coordination of claims issue, and the "usual and customary" payment issue.

10  He maintains, however, that his remaining claims are subject to the discovery rule and

11  therefore are not time-barred.  The issue of discovery, he argues, must be reserved for the

12  trier of fact.

13    The court agrees. While State Farm presents evidence from which one might rule in

14  its favor, it does not show there is no genuine issue of material fact and it is entitled to

15  judgment as a matter of law.

16    For example, State Farm argues that Barton's claim for attendant care is barred

17  because this claim accrued at least by the time State Farm began giving him three hours of

18  attendant care.  This, State Farm reasons, put Barten on notice that he should have been

19  receiving attendant care all along.  Barten himself stated that when State Farm's

20  representative offered him three hours of attendant care, his understanding of his benefits

21  changed.  Barten explained, "that's how I became aware that – sort of, wow, I was entitled

22  to attendant care this whole time." (Doc. 203, p. 2)

23    The term attendant care, however, apparently encompasses a number of different

24  services. *See* (Doc. 169, p. 2)  Accordingly, the fact that State Farm would pay for someone

25

26  _____

27    [1]  At the hearing, the court was informed that these issues are no longer contested.
   (Doc. 347, p. 5)

28                                      - 13 -

1    to help him with his PICC line for three hours per day did not necessarily, as a matter of law,

2    provide Barten with sufficient information from which the court must conclude that he knew

3    or with reasonable diligence should have known he was entitled to additional services apart

4    from his medical needs.

5          Moreover, Barten can provide other evidence that he was in the dark about the extent

6    of his benefits.  He made a telephone call to State Farm when his girlfriend moved away and

7    he was having trouble with many aspects of his day-to-day living.  (Doc. 169-1, pp 19-21)

8    He asked the State Farm representative if they would pay for someone else to do the jobs she

9    formerly performed.  *Id*.  He said he needed help with "everything."  *Id*., p. 21.  He gave the

10   examples "shopping" and "cleaning," but he was told those things are not covered.  *Id*., p.

11   21;  (Doc. 169-3, pp. 27-29)  He inferred from this call that attendant care was no longer

12   available for him.  *Id*., p. 21;  (Doc. 169-3, pp. 27-29)

13         Barten can also present testimony about a meeting he had in the Fall of 2011 when he

14   met Andy Zimmer in Las Vegas  (Doc. 169-1, p. 18)  Zimmer had a similar injury and was

15   also receiving benefits from a PIP Michigan no-fault policy.  *Id*.  Barten credits Zimmer with

16   explaining to him the extent of his benefits.

17         A reasonable trier of fact could find from this evidence that Barten was not aware of

18   the extent of his benefits and therefore did not apply for benefits to which he was entitled.

19         The discovery issue should be left to the trier of fact.  State Farm's motion for

20   summary judgment on this issue should be denied.  *See also Logerquist v. Danforth,* 188

21   Ariz. 16, 22, 932 P.2d 281, 287 (App.1996)  ("In Arizona . . . the statute of limitations

22   defense is not favored. . . .");  *see, e.g., Doe v. Roe*,  191 Ariz. 313, 323-25, 955 P.2d 951,

23   961-63 (1998)  (Although the plaintiff "had her first flashback of abuse," "remembered she

24   had been molested by her father," and began therapy, there was a genuine issue of material

25   fact concerning application of the discovery rule.);  *In re Jackson Nat. Life Ins. Co. Premium*

26   *Litigation*,  107 F.Supp.2d 841, 856 (W.D.Mich. 2000)  (Although terms in the policy were

27

28                                              - 14 -

1  contradicted by representations of the sales agent and terms in the application, there was a

2  genuine issue of material fact concerning application of the discovery rule.).

3      To summarize, Barten's contract claim should be construed according to Michigan

4  law. The one-year-back rule limits his contract damages to one year prior to filing. Barten's

5  bad faith claim should be construed according to Arizona law. Genuine issues of material

6  fact remain as to whether the discovery rule tolls Arizona's two-year statute of limitations.

7

8      (2) Defendant's Motion for Partial Summary Judgment on Plaintiff's Claims Re:
   Sixteen Hours Per Day of Attendant Care  (Doc. 186)

9

10     In its second motion for partial summary judgment, State Farm argues judgment

11 should be entered as a matter of law on Barten's claim that he is entitled to sixteen hours of

12 attendant care.

13     First, State Farm argues "Barten has no legitimate medical necessity for sixteen hours

14 per day of attendant care." (Doc. 186) Accordingly, his contract claim must fail, and his bad

15 faith claim also must fail to the extent it derives from this benefit. (Doc. 186)

16     The PIP policy covers "reasonable charges incurred for reasonably necessary,

17 products, services and accommodations for an injured person's care, recovery, or

18 rehabilitation." (Doc. 186, p. 9) (citing M.C.L. § 500.3107(1)(a)) State Farm argues that

19 the evidence in his case fails to show that 16 hours of attendant care is "reasonably

20 necessary." State Farm cites evidence from which the trier of fact could find in its favor.

21 For example, when Barten was discharged from the Mary Free Bed Hospital in August of

22 1995 following his initial post-accident rehabilitation, "his discharge summary reported that

23 'Bryan was taking personal responsibility for all of his care prior to being discharged.'"

24 (Doc. 186, p. 3)  Barten stated in an interview in 1998 that "I was able to get my

25 independence back. I don't need anyone to take care of me because I have my hands." *Id.*

26 Dr. Kelly, a board-certified physician in physical medicine and rehabilitation, conducted an

27 independent medical examination and concluded that Barten needed only three hours of

28

1    attendant care.  And, while Barten's physician, Dr. Brysacz, prescribed 16 hours of attendant

2    care, he "admitted" that Barten's condition had not changed materially since he prescribed

3    only three hours of attendant care.

4            On a motion for summary judgment, however, the court does not weigh the evidence.

5    Instead, the moving party must show that there is no genuine issue of material fact and it is

6    entitled to judgment as a matter of law.

7            Here, however, there is sufficient evidence from which a reasonable trier of fact could

8    find in Barten's favor.  Barten's physician, Brysacz, believes Barten requires 16 hours of

9    attendant care based on his physical condition and the nature of his injury.  (Doc. 186, p. 5)

10   Woodard, Barten's rehabilitation expert, is in agreement.  (Doc. 220, p. 11)  Barten himself

11   will give testimony that this level of care is necessary.  Accordingly, there is a genuine issue

12   of material fact, and State Farm is not entitled to summary judgment.

13           Contrary to State Farm's arguments, a reasonable trier of fact could conclude the

14   optimistic statements made by the Mary Free Bed Hospital in August of 1995 were biased

15   because that hospital obtains much of its trade from insurers like State Farm.  Brysacz's

16   earlier prescription for only three hours of attendant care does not, as a matter of law, make

17   his later prescription for 16 hours unworthy of credence.  A reasonable trier of fact could find

18   that the first prescription was written for three hours, not because it accurately characterized

19   Barten's level of need, but because that was the benefit State Farm was willing to provide.

20   As for Barten's rosy assessment that  "I don't need anyone to take care of me because I have

21   my hands,"  a reasonable trier of fact could find this simply false bravado from a man with

22   C6-7 quadriplegia.  (Doc. 187-4, p. 3)  It is apparently undisputed that Barten cannot even

23   put himself back into his wheelchair if he falls out.

24           State Farm further argues that it is entitled to judgment as a matter of law on the bad

25   faith claim because Barten cannot prove it acted objectively and subjectively in bad faith.

26   (Doc. 186, p. 8) (citing *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1268 (Ariz.

27

28                                              - 16 -

1   1992)).  Again, State Farm cites evidence from which the trier of fact could find in its favor

2   rather than explaining why there is no genuine issue of material fact.

3          Also, there is evidence from which one could find that State Farm acted in bad faith.

4   One could find State Farm, as an expert in administering No-Fault benefits, understands the

5   difference between replacement services and attendant care.  One could further find State

6   Farm unreasonably terminated Barten's benefits, not because they were not covered, but

7   because they were erroneously classified as replacement services.  Further, one could

8   conclude that when Barten called State Farm to see if his benefits could be restored, State

9   Farm gave misleading information to Barten in reckless disregard for how this might affect

10  his ability to seek benefits.  *See Miel v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 104, 110,

11  912 P.2d 1333, 1339 (App.1995).  A reasonable trier of fact could find that State Farm acted

12  in bad faith.  Partial summary judgment should be denied on this issue.

13         State Farm further argues it is entitled to partial summary judgment because Barten

14  cannot prove he incurred the attendant care expenses for which he seeks payment.   In

15  general, for benefits to be payable "(1) the expense must have been incurred,  (2)  the

16  expense must have been for a product, service, or accommodation reasonably necessary for

17  the injured person's care, recovery, or rehabilitation, and  (3) the amount of the expense must

18  have been reasonable."  *Moghis v. Citizens Ins. Co. of America*, 187 Mich.App. 245, 247,

19  466 N.W.2d 290, 247 (App. 1990).  State Farm concedes, however, that Barten has provided

20  State Farm with attendant-care forms stating that his wife, Jessica Van der Lede, did provide

21  him with 16 hours of attendant care per day.  State Farm argues that irregularities in the

22  forms render them unworthy of credence, but while the trier of fact might very well agree,

23  the court does not resolve credibility issues on a motion for summary judgment.  (Doc. 186,

24  pp. 7, 11, 14)

25         Finally, State Farm argues Barten's bad faith claim fails because he intentionally

26  interfered with its investigation of his claim.  (Doc. 186, pp. 15-16)  In particular, State Farm

27

28

alleges that Barten instructed his doctor not to respond to State Farm's inquiries concerning his prescription for 16 hours of attendant care.

Barten does not dispute State Farm's allegation.  He argues, however, that the information State Farm already had by this time was more than sufficient to establish his need for 16 hours of attendant care.  Accordingly, there was no need for additional inquires. This issue also must be determined by the trier of fact.  *But see Jackson v. Allstate Ins. Co.*, 780 F.Supp.2d 781, 792 (S.D.Ind. 2011)  (Insurer did not cause unfounded delay in payment where the plaintiff and counsel caused delay in obtaining the medical records.).

Genuine issues of fact remain on Barten's contract and bad faith claims that he is entitled to 16 hours of attendant care.

(3) <u>Defendant's Motion for Partial Summary Judgment Re: Alleged "Hurdles" to Plaintiff's Recovery of Benefits and Plaintiff's Claims for Bad Faith and Punitive Damages</u> (Doc. 188).

State Farm argues it is entitled to judgment as a matter of law on the issues of (a) failing to advise Barten of the extent of his benefits, (b) requiring Barten to submit his medical expenses to his private health insurer first before seeking benefits, (c) failing to pay more than "reasonable and customary" amounts, and (d) requiring reasonable documentation before paying claims for reimbursement.  State Farm also moves for summary judgment on the issues of bad faith and punitive damages.

*Failure to Advise*

State Farm moves for summary judgment on Barten's claim that it failed to advise him of the extent of his benefits.

State Farm is partially correct.  There is no statutory provision in the No-Fault Act requiring the insurer to explain benefits to the insured.  Accordingly, failure to explain cannot result in a breach of contract. *See Schwein v. State Farm Mut. Auto. Ins. Co.*,  2013 WL

1  4605892, 4 (E.D.Mich. 2013)  ("Indeed, as the court acknowledged in *Paquette*, there is no
2  statutory obligation to explain benefits under the No Fault Act.").

3        The bad faith claim, however, should be construed in accordance with Arizona law,
4  and in Arizona, failure to explain benefits can support bad faith liability.  *Nardelli v.*
5  *Metropolitan Group Property and Cas. Ins. Co.*,  230 Ariz. 592, 603, 277 P.3d 789, 800
6  (App. 2012) ("[T]he duty of good faith encompasses some obligation to inform the insured
7  about the extent of coverage and his or her rights under the policy and to do so in a way that
8  is not misleading.");  *see also Rawlings v. Apodaca*, 151 Ariz. 149, 155, 726 P.2d 565, 571
9  (1986)  (The insurance company "has some duties of a fiduciary nature . . . [e]qual
10 consideration, fairness and honesty are among them.").

11       State Farm argues it has no duty to advise Barten about his policy benefits because
12 all benefits are described in the no-fault statute and  "all persons are presumed to know the
13 contents of the statutory provision."  *Cooper v. Arizona Western College Dist. Governing*
14 *Bd.*, 125 Ariz. 463, 467, 610 P.2d 465, 469 (App. 1980).  The *Cooper* court, however,  made
15 that statement in the context of holding that a college district governing board has no duty
16 to advise its employees that they have a right "to demand consideration of employment
17 matters at a public meeting." *Id*.  The *Cooper* court was not construing the duty of an insurer
18 to act in good faith toward its insured.  *Cooper* is distinguishable.

19       State Farm further argues it was reasonable for it to assume that Barten was being
20 advised as to his rights under the statute by his lawyer, George Sinas.  Therefore, it acted
21 reasonably by not further advising Barten of his no-fault benefits.  The extent of this
22 relationship, however, is contested.  Accordingly, this issue remains for the trier of fact
23
24       *Coordinated Care*

25       State Farm also argues Barten's policy had "coordinated" coverage, and it acted
26 properly by requiring Barten to seek reimbursement from his private health insurer before
27 seeking benefits from State Farm.  It further argues it acted properly in denying coverage for
28

- 19 -

1   a claim that Barten's private insurer would not cover because Barten failed to seek
2   preauthorization.

3       The no-fault act allows insureds the option of obtaining "coordinated" coverage in
4   exchange for reduced premium rates. *Tousignant v. Allstate Ins. Co.*, 444 Mich. 301, 304,
5   506 N.W.2d 844, 846 (1993). State Farm asserts Barten has this "coordinated" coverage and
6   must submit his medical claims first to his health insurance provider, CIGNA. (Doc. 188-1,
7   p. 4)

8       Assuming State Farm is correct about Barten's particular policy, and Barten does not
9   dispute State Farm's characterization of his policy, State Farm is entitled to partial summary
10  judgment on this issue. State Farm's insistence that Barten first seek reimbursement from
11  his employer provided health insurance, CIGNA, is in accordance with the contract. And,
12  it is difficult to see how State Farm's insistence that Barten comply with the terms of the
13  contract would support a bad faith claim.

14      Barten agrees that these actions by State Farm are not part of his bad faith claim.
15  (Doc. 219, p. 11)  He argues vaguely that the provision of the Michigan no-fault law
16  requiring "coordinated coverage" conflicts with ERISA.  He does not, however, explicitly
17  explain this argument.

18      An unambiguous coordination of benefits (COB) clause in an ERISA plan does take
19  priority over the COB clause in the no-fault policy. *Auto Club Ins. Ass'n v. Frederick &*
20  *Herrud, Inc.*, 443 Mich. 358, 387, 505 N.W.2d 820, 833 (1993). Here, however, there is no
21  evidence that Barten's CIGNA policy has a conflicting COB clause.

22      State Farm is entitled to partial summary judgment on this issue.

23

24      *"Reasonable and Customary" Payment*

25      State Farm argues that it acted properly by paying providers "reasonable and
26  customary" amounts for services rendered rather than the amounts billed. (Doc. 188, p. 7)

27

28                                    - 20 -

State Farm informed Barten of this policy condition and assured him that under the statute he should not be responsible for the unpaid difference.   (Doc. 188, pp. 8-9)

Barten affirmatively states that State Farm's payment of "reasonable and customary" amounts is not part of his bad faith claim. (Doc. 219, p. 11, n. 3)   And, he does not argue State Farm's payment policy is a breach of the contract. *Id*. State Farm is entitled to partial summary judgment on this claim.

*Documentation*

State Farm argues Barten cannot show he was denied benefits because of a failure to provide State Farm with the requested documentation.

According to State Farm, an insurer is required only to reimburse its insured for "reasonable charges incurred for reasonably necessary products, services and accommodations. . . ."  (Doc. 188, p. 9)   In order to make this determination of reasonableness, it asks its insureds to provide documentation of the products and services for which the insured seeks reimbursement.  This procedure, State Farm argues is the best way to implement the statute.  Further, State Farm asserts that Barten cannot show any of his claims for attendant care reimbursement were denied for failure to provide formal documentation.  State Farm seeks partial summary judgment on the issue of documentation.

 Barten does not address this issue directly, but he refers the court to his response to State Farm's motion for partial summary judgment on the 16-hour attendant care issue.  It appears that Barten will attempt to show at trial that he provided sufficient information to prove his claims were reasonable. (Doc. 220, pp. 11-16) He does not say he will attempt to prove that his claims were denied purely because his proof was not supplied on the proper forms. Accordingly, State Farm is entitled to partial summary judgment on this narrow issue.

*Bad Faith and Punitive Damages*

1    State Farm argues it is entitled to summary judgment on the issue of bad faith and

2    punitive damages.

3        "[T]here is a legal duty implied in an insurance contract that the insurance company

4    must act in good faith in dealing with its insured on a claim, and a violation of that duty of

5    good faith is a tort." *Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504, 506-507, 838

6    P.2d 1265, 1267-1268 (1992).  "There are two elements to the tort of bad faith: (1) that the

7    insurer acted unreasonably toward its insured, and (2) that the insurer acted knowing that it

8    was acting unreasonably or acted with such reckless disregard that such knowledge may be

9    imputed to it." *Miel v. State Farm Mut. Auto. Ins. Co.*, 185 Ariz. 104, 110, 912 P.2d 1333,

10   1339 (App. 1995). Although bad faith actions are often brought because the insurer denied

11   a specific insurance claim, bad faith may result from any act that breaches the implied

12   covenant of good faith and fair dealing, even acts that do not breach an express term in the

13   policy.  *Deese*, 172 Ariz. at 509, 838 P.2d at 1270.  A plaintiff "need not prevail on the

14   contract claim in order to prevail on the bad faith claim. . . ." *Id.*

15       As the court explained above in the context of the 16-hour attendant care claim, a

16   reasonable trier of fact could return a verdict for Barten on his bad faith claim.  Accordingly,

17   there is a genuine issue of material fact, and State Farm is not entitled to partial summary

18   judgment.

19       "[T]o obtain punitive damages, plaintiff must prove that defendant's evil hand was

20   guided by an evil mind." *Rawlings v. Apodaca*, 151 Ariz. 149, 162, 726 P.2d 565, 578

21   (1986).  "The evil mind which will justify the imposition of punitive damages may be

22   manifested in either of two ways." *Id.*  "It may be found where defendant intended to injure

23   the plaintiff." *Id.*  "It may also be found where, although not intending to cause injury,

24   defendant consciously pursued a course of conduct knowing that it created a substantial risk

25   of significant harm to others." *Id.*

26       "Summary judgment on the question of punitive damages is inappropriate if a

27   reasonable jury could find the requisite evil mind by clear and convincing evidence."

28                                              - 22 -

*Demetrulias v. Wal-Mart Stores Inc.*, 917 F.Supp.2d 993, 1010-1011, 2013 WL 135273, 14 (D.Ariz. 2013) (*quoting Thompson v. Better–Bilt Aluminum Prods. Co.*, 171 Ariz. 550, 558, 832 P.2d 203, 211 (1992). "The evil mind can be shown by some combination of evil actions, spiteful motives, or outrageous, oppressive or intolerable conduct that creates a substantial risk of tremendous harm to others." *Id*. (punctuation modified)   "Put another way, the court considers the nature of the defendant's conduct, including the reprehensibility of the conduct and the severity of the harm likely to result, as well as the harm that has occurred, the duration of the misconduct, the degree of defendant's awareness of the harm or risk of harm, and any concealment of it." *Id*.

As the court explained above, a reasonable trier of fact could find State Farm terminated Barten's attendant care knowingly or recklessly, that the benefit was necessary to Barten's physical and mental health, and that its absence entailed significant risk of harm to a person with limited physical abilities. *See, e.g*., (Doc. 169-1, pp. 18-19)  (describing how after his replacement services were terminated, Barten lay in urine soaked bedding because he was unable to change his linen without help)  There is sufficient evidence from which the trier of fact could find punitive damages appropriate by clear and convincing evidence.  Summary judgment should be denied on this issue.  *See, e.g., Daly v. Royal Ins. Co. of America*, 2002 WL 1768887, 18 (D.Ariz. 2002) (Summary judgment on the issue of punitive damages was denied where there was evidence that the insurer intentionally concealed its understanding that the insured was entitled to higher coverage limits.).

State Farm is entitled to partial summary judgment on the issues of  (1) failure to advise (to the extent it is raised as a contract claim), (2) coordinated care,  (3) "reasonable and customary" payment, and (4) documentation.  There remain genuine issues of material fact on Barten's bad faith claim and his claim for punitive damages.

RECOMMENDATION:

1    The Magistrate Judge recommends the District Court, after its independent review of

2    the record, enter an order as follows:

3        (1) GRANTING in PART the Defendant's Motion for Partial Summary Judgment Re:

4    Contract and Bad-Faith Claims.  (Doc. 108)  Barten's contract claim should be construed

5    according to Michigan law.  The one-year-back rule limits his contract damages to one year

6    prior to filing.  Barten's bad faith claim should be construed according to Arizona law.

7    Genuine issues of material fact remain as to whether the discovery rule tolls Arizona's two-

8    year statute of limitations.

9        (2) DENYING the Defendant's Motion for Partial Summary Judgment on Plaintiff's

10   Claims Re: Sixteen Hours Per Day of Attendant Care.  (Doc. 186)   Genuine issues of

11   material fact remain on Barten's claim to 16 hours of attendant care.

12       (3) GRANTING in PART the Defendant's Motion for Partial Summary Judgment Re:

13   Alleged "Hurdles" to Plaintiff's Recovery of Benefits and Plaintiff's Claims for Bad Faith

14   and Punitive Damages.  (Doc. 188)  State Farm is entitled to partial summary judgment on

15   the issues of  (a) failure to advise (to the extent it is raised as a contract claim), (b)

16   coordinated care,  (c) "reasonable and customary" payment, and (d) documentation.  There

17   remain genuine issues of material fact on Barten's bad faith claim and his claim for punitive

18   damages.

19       Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within

20   14 days of being served with a copy of this report and recommendation.   If objections are

21   not timely filed, the party's right to de novo review may be waived.  The Local Rules permit

22   the filing of a response to an objection.  They do not permit the filing of a reply to a response.

23       DATED this 21st day of March, 2014.

24

25                                          Leslie A. Bowman
                                         United States Magistrate Judge
26

27

28                                      - 24 -