WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryan Barten, | No. CV-12-00399-TUC-CKJ (LAB) |
| Plaintiff, | **ORDER** |
| v. | |
| State Farm Mutual Automobile Insurance Company, | |
| Defendant. | |

On March 21, 2014, Magistrate Judge Leslie A. Bowman issued a Report and Recommendation, (Doc. 348), which addressed defendant's three motions for partial summary judgment. (Docs. 108, 186, and 188). Magistrate Judge Bowman advised the parties that written objections to the Report and Recommendation were to be filed within fourteen days after service of a copy of the Report and Recommendation pursuant to 28 U.S.C. §636(b). Defendant has filed an objection. (Doc. 350). Plaintiffs have filed a response. (Doc. 353). On May 7, 2014, Defendant's filed a Motion for Leave to File a Reply. (Doc. 354). Plaintiff filed an Opposition to Defendant's Motion on May 13, 2014, (Doc. 356), and Defendant filed a Reply in Support of their Motion to File a Reply to Defendant's Objections on May 23, 2014. (Doc. 357).

I.     **Motion for Leave to File a Reply**

Rule 72 of the Federal Rules of Civil Procedure permits a party to file objections to a Magistrate Judge's Report and Recommendation and permits a party to respond to

1   another party's objections.  Fed.R.Civ.P. 72(b)(2).  However, the rule does not permit the

2   filing of replies. Moreover, in Magistrate Judge Bowman's Report and Recommendation,

3   she specifically explained that the rules do not permit the filing of a reply to a response to

4   a party's objections.  (Doc. 348 at p. 24).

5          Further, the Court does not find that a reply to the response is necessary in this

6   matter.   There has been extensive briefing and argument related to the issues presented to

7   this Court.   The parties have filed three separate summary judgment motions all with

8   corresponding responses and replies, conducted oral argument before Magistrate Judge

9   Bowman and had an opportunity to file objections and a response to the objections to

10  Magistrate Judge Bowman's Report and Recommendation.   A review of Plaintiff's

11  proposed reply reveals that it does not add anything significant to the briefing in this

12  matter.  As such, Defendant's Motion to File a Reply is denied.  *See Hess v. Ryan*, 651

13  F.Supp.2d 1004, 1009, n.1 (D. Ariz. 2009).

14

15  **II.      Standard of Review**

16         This Court "may accept, reject, or modify, in whole or in part, the findings or

17  recommendations made by the magistrate."   28 U.S.C. § 636(b)(1).   Pursuant to 28

18  U.S.C. § 636(b)(1), if a party makes a timely objection to a magistrate judge's

19  recommendation, then this Court is required to "make a *de novo* determination of those

20  portions of the [report and recommendation] to which objection is made."   *See also*

21  *Schmidt v. Johnstone*, 263 F.Supp.2d 1219, 1226 (D.Ariz. 2003) (reading the Ninth

22  Circuit's decision in *Reyna-Tapia* as adopting the view that district courts are not required

23  to review "any issue that is not the subject of an objection"); *United States v. Reyna-*

24  *Tapia*, 328 F.3d 1114 (9th Cir.2003) (disregarding the standard of review employed by

25  the district court when reviewing a report and recommendation to which no objections

26  were made).

27

28  **III.     Background**

The parties do not object to the factual background as set forth in the Report and Recommendation.   As such, the Court adopts the Report and Recommendation's background information.

**IV.     Defendant's Motion for Partial Summary Judgment Re: Contract and Bad Faith Claims.  (Doc. 108).**

Defendant's Motion addresses several subjects.  Defendant argues that Michigan law applies to Plaintiff's breach of contract and bad faith claims.  Applying Michigan law, Plaintiff's claims for benefits are subject to Michigan's statutory one year back rule, which limits contract and tort claims for personal injury protection ("PIP") benefits from one year prior to the date on which the action is commenced.  MCL §500.3145(1).

Further, Michigan law does not recognize the tort of bad faith and as such, Plaintiff's claims for bad faith are barred.  *See Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 604, 374 N.W.2d. 905, 909 (Mich. 1985) (citation omitted). *Compare Zilisch v. State Farm Mutual Auto. Inc. Co*., 196 Ariz. 234, 237, 995 P.2d. 276, 279 (Ariz. 2000); *Rawlings v. Apodaca,* 151 Ariz. 149, 160, 726 P.2d. 565, 576 (1986) (Arizona law does allow a bad faith tort action).   In the alternative, Defendant argues that even if the Court were to apply Arizona law to Plaintiff's bad faith claim, any claims that occurred before April 13, 2010 are barred by Arizona's two-year statute of limitations.

*Choice of Law – Plaintiff's Breach of Contract Claim*

Magistrate Judge Bowman found that Plaintiff's breach of contract claim should be decided pursuant to Michigan law.  The parties have not raised any objections to this recommendation.     As such, the Court adopts this recommendation.

*One Year Limitations – Plaintiff's Breach of Contract Claim*

Magistrate Judge Bowman found that Plaintiff's recovery for breach of contract damages is limited by Michigan's one year back rule.  Plaintiff has not raised any objections to this recommendation.  As such, the Court adopts this recommendation.

1

2    *Choice of Law – Plaintiff's Bad Faith Claim*

3         Magistrate Judge Bowman found that Plaintiff's bad faith claims are governed by

4    Arizona law.  Defendant timely filed an objection to this recommendation and suggests

5    that Michigan law should apply to Plaintiff's bad faith claims.

6         Federal courts sitting in diversity must apply the forum state's choice of law rules.

7    *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 610 (9th Cir. 2010).  "Arizona courts

8    apply   the   principles   of   the   Restatement   (Second)   of   Conflict   of   Laws   (1971)

9    ("Restatement") to determine the controlling law for multistate torts."  *Bates v. Superior

10   Court of State of Ariz. In and For the County of Maricopa*, 156 Ariz. 46, 48, 749 P.2d.

11   1367, 1369 (Ariz. 1988); *Pounders v. Enserch E&C, Inc*., 232 Ariz. 352, 354, 306 P.3d.

12   9, 11 (Ariz. 2013).

13        "Restatement §6(2) lists the general factors relevant to choosing the applicable

14   rule of law and §145 gives further guidance for the application of the §6 factors to tort

15   issues." *Bates,* 156 Ariz. at 48-49, 749 P.2d. at 1369-70.  Pursuant to §145, in resolving

16   multistate tort issues, the courts must apply the law of the state which "has the most

17   significant relationship to the occurrence and the parties under the principles stated in

18   §6."  Restatement (Second) Conflict of Laws §145(1); *Bates*, 156 Ariz. at 48-49, 749

19   P.2d. at 1369-70.

20        In order to perform this analysis in accordance with Arizona law, this Court first

21   considers the general tort choice of law principles of Restatement §145 as well as the

22   specific personal injury principles of Restatement §146.  *See Bates*, 156 Ariz. at 49, 749

23   P.2d. at 1370 (finding that pursuant to Arizona law, a bad faith refusal to provide benefits

24   to an insured can create sufficient mental distress to qualify as a personal injury). Then,

25   the Court applies the guidelines of both of those sections to the general principles listed

26   in Restatement §6(2). *Lange v. Penn Mut. Life Ins. Co.*, 843 F.2d 1175, 1178-1179 (9th

27   Cir. 1988) (citing *Bates*, 156 Ariz. at 48-50, 749 P.2d. at 1369-71).

28        Restatement §145 provides:

1
2
3

      (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in §6.

4
5

      (2) Contracts to be taken into account in applying the principles of §6 to determine the law applicable to an issue include:

6

            (a) the place where the injury occurred,

7
8

            (b) the place where the conduct causing the injury occurred,

9

            (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

10

            (d) the place where the relationship, if any, between the parties is centered.

11
12

These contacts are to be evaluated accordance to their relative importance with respect to the particular issue.

13
14
15
16
17

      Applying the first §145 factor, Magistrate Judge Bowman concluded that the injury occurred in Arizona because Arizona is where Plaintiff experienced mental and physical harm as a result of Defendant's alleged bad faith in providing misleading information regarding the extent of his benefits.  (Doc. 348, p. 9).  Defendant argues that some of Plaintiff's alleged injuries occurred in Michigan.

18
19
20
21

      The "place of injury" is where "the last event necessary for liability occurred (that is, the place where the injury manifested)."  *Pounders*, 232 Ariz.at 356, 306 P.3d. at 13.  The last event necessary for liability can only occur in one location, which "preserves the Restatement goals of certainty, predictability, and uniformity of result."  *Id.*

22
23
24
25
26
27
28

      On April 21, 1995, Plaintiff lived in Hart, Michigan when he was involved in a single vehicle accident in Lansing Michigan.  (Doc. 169-1 at p. 1).  At the time of his injury, Plaintiff was insured under his father's insurance policy issued by Defendant in Michigan.  *Id.* at 2.   After the accident, on April 28, 1995, Plaintiff was represented by attorney George T. Sinas who applied for PIP benefits on Plaintiff's behalf.  *Id.* at 4.  Plaintiff began receiving various PIP benefits from Defendant in 1995 and all claims were handled by personnel in Michigan.  *Id.* at 5.

Plaintiff moved to Tucson, Arizona in December 1996. *Id*. at 7. After moving to Tucson, Plaintiff was initially assisted by his girlfriend. *Id*. at 19-20. Defendant paid her for her services including shopping and transferring Plaintiff to and from his wheelchair. *Id*. at 20. Plaintiff's girlfriend moved in 1997 and Plaintiff subsequently experienced significant problems handling daily personal activities. *Id*. at 19-20. Plaintiff contacted Defendant and advised them that he needed help with "everything." *Id*. at 21. He gave examples of shopping and cleaning and was advised that these services were not covered. *Id*. As a result, Plaintiff believed that all services other than medical bills were no longer covered. *Id*. In the fall of 2011, Plaintiff met Andy Zimmer in Las Vegas. *Id*. at 18. Mr. Zimmer was receiving PIP benefits from a Michigan no fault insurance policy and he advised Plaintiff on the actual extent of his coverage. *Id*.

While Plaintiff may allege that Defendant failed to provide him with his full panoply of benefits originating from his time in Michigan, he did not begin to suffer mental and physical distress as a result of Defendant's alleged bad faith in the handling of his claim until after his girlfriend moved and Defendant allegedly provided him with misleading information regarding his benefits. These acts occurred while Plaintiff was living in Arizona. Accordingly, the place of injury in this case is Arizona.

In analyzing the second §145 factor, Magistrate Judge Bowman concluded that the conduct causing the injury occurred in Michigan where Plaintiff's claims were handled. (Doc. 348, p. 9). The Court agrees. Defendant allegedly injured Plaintiff through its bad faith practices and since Plaintiff's claims were handled in Michigan, that is where the bad faith conduct causing Plaintiff's injuries, allegedly occurred.

Analyzing the third §145 factor, Magistrate Judge Bowman explained that Defendant is incorporated in Illinois and has its principal place of business in Illinois, while Plaintiff is domiciled in Arizona. Magistrate Judge Bowman gave more weight to Plaintiff's domicile. Defendant argues that Magistrate Judge Bowman failed to consider that Defendant does significant business in Michigan, the insurance policy was issued out of Defendant's Michigan office, and Plaintiff resided in Michigan when he suffered the

- 6 -

1    underlying injuries from the vehicular accident.  Defendant suggests that this factor is a

2    split between Michigan and Arizona.

3        While there are geographic contacts between Michigan and Arizona amongst the

4    parties, Arizona applies "greater weight to the residence of the alleged tort victim" in

5    cases where the injury is to plaintiff's personal interests.  *Bates*, 156 Ariz. at 50, 749

6    P.2d. at 1371.  While Plaintiff's residence was Michigan at the time some of Defendant's

7    alleged bad faith conduct occurred, the Court has already determined that Plaintiff was

8    domiciled in Arizona when he felt the impact of Defendant's alleged conduct.  As a

9    result, the Court will ascribe greater weight to Plaintiff's Arizona contacts.

10       Analyzing the fourth §145 factor, Magistrate Judge Bowman found that the

11   relationship between the parties is centered between Illinois and Arizona.   (Doc. 348, p.

12   9).  Defendant argues that all of Plaintiff's claims were handled in Michigan by Michigan

13   PIP claim representatives and Defendant's claims representatives communicated with

14   Plaintiff from Michigan.

15       As stated by the Arizona Supreme Court, in an insurance bad faith case, "the

16   relationship would seem to be centered at the insurer's home office."  *Bates*, 156 Ariz. at

17   50, 749 P.2d. at 1371.  It is undisputed that many of Defendant's 69 employees who were

18   involved in Plaintiff's claim handled his claim physically out of Michigan.  *See* (Doc.

19   169-1 at pp 5-7).   The claim was initially processed in Michigan based on an automobile

20   insurance policy issued in Michigan to Plaintiff's father, a Michigan resident, as a result

21   of an automobile accident that occurred in Michigan.  *See* (Doc. 169-1 at pp. 1-3, 5-7).

22   As such, this Court finds that the parties' relationship is primarily centered in Michigan.

23       A review of this Court's analysis reveals that the factors are quantitatively evenly

24   split between Michigan and Arizona.  However, the Court's analysis on "which state has

25   the most significant contacts is qualitative, not quantitative."  *Lange,* 843 F.2d at 1180

26   (citing *Bates,* 156 Ariz. at 49, 749 P.2d. at 1370).  In performing this analysis, the Court

27   must consider Restatement §146.  *Lang*, 843 F.2d at 1180; *Bates*, 156 Ariz. at 49, 749

28   P.2d. at 1370.

Restatement §146 states:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in §6 to the occurrence and the parties, in which event the local law of the other state will be applied.

In this case, the injury occurred in Arizona.  Accordingly, unless another state has a more significant relationship under the principles stated in Restatement §6 to the occurrence and the parties, Arizona law shall apply.  Pursuant to Restatement §6:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
>
> > (a) the needs of the interstate and international systems,
> >
> > (b) the relevant policies of the forum,
> >
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> >
> > (d) the protection of justified expectations,
> >
> > (e) the basic policies underlying the particular field of law,
> >
> > (f) certainty, predictability and uniformity of result, and,
> >
> > (g) ease in the determination and application of the law to be applied.

Defendant argues that several of these factors support applying Michigan law, specifically factors (c), (d), (e), and (f).  The Court finds that factor (a), "the needs of the interstate and international systems," has minimal relevance to this bad faith action.  *See Bates*, 156 Ariz. at 50, 749 P.2d. at 1371; *Lange*, 843 F.2d at 1180.   Further, Plaintiff's bad faith action is based in tort not contract, as such, factor (d), "the protection of justified expectations," is not a relevant factor to consider.  *See Lange*, 843 F.2d at 1180-1181 (finding that plaintiff's claim alleging a breach of the implied covenant of good

faith arises in tort and "in such a case, subsection (d) of Restatement §6(2) is not applicable") (citing *Bates*, 156 Ariz. at 50, 749 P.2d. at 1371); *see also* Restatement §145, comment (b) ("the protection of justified expectations of the parties, which is of extreme importance in such fields as contracts, property, wills and trusts, is of lesser importance in the field of torts.").

Next, this Court finds that factor (e), "the basic policies underlying the particular field of law," is similarly neutral. *See* Restatement §6, comment (h) ("this factor [basic policies underlying particular field of law] is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules."). Additionally, factor (f), is of "lesser importance in torts." Restatement §145, comment (b); *see also Lange*, 843 F.2d at 1180 (applying §6 factors to an insurance bad faith claim the Court determined that a consideration of the principle of certainty, predictability and uniformity of result is not helpful); *Bates*, 156 Ariz. at 50 (finding that the factor considering certainty, predictability and uniformity of result is neutral in the insurance bad faith context), and factor (g) is insignificant to this analysis as this Court could easily apply either Arizona law or Michigan law to this claim. *See Garcia v. General Motors Corp.*, 195 Ariz. 510, 519, 990 P.2d. 1069, 1078 (Ariz. Ct. App. 1999); *see also Bates*, 156 Ariz. at 50, 749 P.2d. at 1371.

The Court finds that factors (b) and (c) are applicable to this case and carry greater weight than the other factors. *Pounders*, 232 Ariz.at 359, 306 P.3d at 16; *see also* Restatement §145, comment (b) (identifying the policies of the forum and interested states as factors of relatively greater importance in tort cases). The Court evaluates the relevant policies of the forum state and other interested states "in light of §145's contacts, considering particularly the policy of the dominant state." *Pounders*, 232 Ariz. at 359, 306 P.3d at 16.

The relevant policies of Arizona and Michigan are completely different in this case. Arizona permits recovery for insurance bad faith claims. *See Zilisch*, 196 Ariz.at

237, 995 P.2d. at 279.   Michigan does not recognize a separate cause of action for insurance bad faith.  *Roberts*, 422 Mich. at 604, 374 N.W.2d. at 909 (citations omitted). As the forum state, Arizona has an interest in making sure that its residents are made whole for injuries caused while in Arizona.  However, Defendant correctly points out that Michigan provides a comprehensive law governing no fault claims that permits among other things lifetime attendant care benefits.  While Michigan may have an interest in precluding the use of insurance bad faith litigation in light of its expansive No Fault Act, the Court finds that this interest does not create a greater interest in applying Michigan law to Plaintiff's bad faith claim in this case.

After applying the principles of Restatement §§145, 146, and 6, this Court agrees with the Magistrate Judge and concludes that Arizona law shall apply to Plaintiff's insurance bad faith claim as it has the most significant relationship to the parties.

Defendant further argues that Michigan law should apply even though Plaintiff subsequently moved to Arizona and his resulting injuries were suffered in Arizona.  *See Pounders*, 306 P.3d at 15, 667 P.3d. at 358.  In *Pounders*, the plaintiff was exposed to asbestos in New Mexico but was diagnosed with mesothelioma in Arizona years later. *Id.*  The court ascribed minimal significance to the place of injury in its choice of law analysis holding that the plaintiff's move to Arizona was fortuitous and as a result it applied significant weight to the location where the conduct causing the injury occurred. *Id.*   Defendant suggests that the facts in this case are analogous to *Pounders* and as such, the Court should perform a similar analysis.  *See Id.*    This Court disagrees.

While, there may be situations where the place of injury does not play an important role in determining the state law to apply such as when the place of injury is fortuitous or when it bears little relation to the occurrence and the parties with respect to the particular issue, Restatement (Second) Conflict of Laws §145 comment (e), generally, in cases involving personal injuries, the place where the injury occurred plays an "important role in the selection of the state of the applicable law."  *Id.*

In this case, there was an ongoing and continuing relationship between Plaintiff

and Defendant from the time of the Plaintiff's underlying accident in Michigan and continuing after he moved to Arizona. However, most of the alleged acts of bad faith occurred while Plaintiff resided in Arizona. Further, the plaintiff in *Pounders* did not have a continuing relationship with the defendant and there was no relationship between defendant's actions and the place of injury. As such, the Court finds this case distinguishable from the unique situation in *Pounders* and applies the general rule that the place of injury plays a more significant role in the Court's analysis. *See* Restatement (Second) Conflict of Laws §146, comment (c).

Defendant argues that applying Arizona law to Plaintiff's insurance bad faith claim would create a new duty under Michigan's no fault insurance policy that does not exist under Michigan law, such as a duty to advise the insured on his insurance benefits. However, Defendant is a national insurer and would have known that its Michigan insureds may relocate. As a result, Defendant is aware that it may have to perform its obligations as an insurer in any state. Defendant "could not justifiably expect that every aspect of its conduct would be governed by the law of the state in which the contract originally was made." *Bates*, 156 Ariz. at 51, 749 P.2d at 1372. Moreover, as noted earlier, the Court is applying Arizona law only to Plaintiff's claim in tort; Plaintiff's claim for breach of contract remains subject to Michigan law.

*Statute of Limitations – Bad Faith Claim*

Magistrate Judge Bowman recommended applying Arizona's two year statute of limitations to Plaintiff's bad faith claim. Neither party objects to this recommendation and it is adopted.

Magistrate Judge Bowman further recommended that this Court refer a determination on whether the discovery rule is applicable to Plaintiff's bad faith claim to the trier of fact because a reasonable jury could find that Plaintiff was not aware of the extent of his benefits prior to the deadline for the statute of limitations. Defendant objects to this recommendation.

1    Pursuant to Arizona law:

2         [I]nsurance contracts include an implied covenant of good
          faith and fair dealing, whereby each party is 'bound to refrain
3         from any action which would impair the benefits which the
          other had the right to expect from the contract or the
4         contractual relationship. *Voland v. Farmers Ins. Co.*, 189
          Ariz. 448, 451, 943 P.2d 808, 811 (App.1997),
5         quoting *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d
          565, 570 (1986).
6

7    *Rowland v. Great States Ins. Co.*, 199 Ariz. 577, 582, 20 P.3d 1158, 1163 (Ariz.

8    Ct. App. 2001) (internal quotations omitted).  This implied covenant is breached when an

9    insurer's conduct damages the security which the insured sought to gain by buying

10   insurance.  *Deese*, 172 Ariz. at 508, 838 P.2d. at 1269 (citations omitted).

11       Arizona's two year limitation period for bad faith claims "begins to run upon

12   accrual."  *Manterola v. Farmers Ins. Exchange*, 200 Ariz. 572, 576, 30 P.3d 639, 643

13   (Ariz. Ct. App. 2001) (citing *Doe v. Roe*, 191 Ariz. 313, 326, 955 P.2d 951, 964 (Ariz.

14   1998).  "Under the common law discovery rule, a cause of action does not accrue until

15   the plaintiff knows or with reasonable diligence should know" the defendant's wrongful

16   conduct.  *Id*. (internal quotations and citations omitted).

17       Defendant argues that Plaintiff submitted requests for reimbursement to Defendant

18   for attendant care services such as bathing, toileting, dressing and undressing before the

19   April 13, 2010 limitations date.  As such, Plaintiff knew he was entitled to services above

20   and beyond his medical needs prior to April 13, 2010 and any claims relating to conduct

21   that occurred prior to that date are time barred.

22       While this appears to be compelling evidence that Plaintiff at a minimum had

23   reason to know that he was entitled to attendant care benefits beyond his medical needs

24   prior to the April 13, 2010 limitations date, Plaintiff has submitted evidence that he was

25   not aware of the actual extent of his benefits until after his conversation with Andy

26   Zimmer in the fall of 2011.

27       In the context of a motion for summary judgment, the Court must draw all

28   inferences in the light most favorable to the nonmoving party. *Musick v. Burke*, 913 F.2d

1390, 1394 (9th Cir. 1990).  Further, the Court may not make credibility determinations or weigh conflicting evidence.  *Id*.  Applying these rules, the Court determines that a genuine issue of fact exists as to whether Plaintiff knew or reasonably should have known about Defendant's alleged bad faith actions relating to his attendant care prior to April 13, 2010.

Next, Defendant argues that prior to 2010, Plaintiff was represented by attorney George Sinas in relation to his claim for benefits.  As such, Plaintiff actually or constructively knew through Mr. Sinas about the availability of attendant care benefits prior to April 13, 2010.  Plaintiff responds that there are factual disputes regarding the nature, extent and relevance of Plaintiff's representation by Mr. Sinas.

There is significant evidence in this case to demonstrate that Plaintiff had an ongoing attorney client relationship with Mr. Sinas during intermittent periods from 1995 through 2006.  On April 28, 1995, Mr. Sinas drafted a letter advising Defendant that he had been retained by Plaintiff.  (Doc. 108-2, p. 43).  Then, on May 21, 1996, Mr. Sinas sent another letter to Defendant in relation to his representation of Plaintiff for replacement services.  (Doc. 169-10).  Further, it is undisputed that Mr. Sinas represented Plaintiff for a period of 12 months after the underlying accident for first party benefits.  (Doc. 169-1 at p. 4).

Additionally, there is some evidence that Mr. Sinas represented Plaintiff between 2004 and 2008.  During that time period, Plaintiff sent numerous letters to Defendant in which he copied Mr. Sinas.  *See* (Doc. 108-2, pp. 92, 93, 95, and 96).  Further, in a February 11, 2006 letter to Defendant, Plaintiff explicitly stated that he was requesting certain services "upon the advice of [his] attorney George T. Sinas."  (Doc. 108-2 at p. 95).  Finally, there were communications between Plaintiff and Mr. Sinas relating to Plaintiff's claim from 2004 through 2008, in which Plaintiff sought legal advice.  (Doc. 310-1 at p. 4).

However, Plaintiff contends that Mr. Sinas did not represent him after 1996.  While Defendant received letters from Plaintiff after 1996 that referenced Mr. Sinas,

1    Defendant has not submitted any evidence that it received communications or

2    correspondence directly from Mr. Sinas related to Plaintiff's claim after 1996.

3         An attorney client relationship is formed when: "(1) a person manifests to a lawyer

4    the person's intent that the lawyer provide legal services for the person; and ... (a) the

5    lawyer manifests to the person consent to do so."  *Paradigm Ins. Co. v. Langerman Law*

6    *Offices, P.A*., 200 Ariz. 146, 149, 24 P.3d 593, 596 (Ariz. 2001) (quoting Restatement

7    (Third) of the Law Governing Lawyers §14).   There is no requirement that the

8    relationship be subject to an express oral or written agreement and the relationship may

9    be formed by an intent among the parties to create an attorney client relationship or

10   acquiescence.   *Paradigm Ins. Co.,* 200 Ariz. at 148-149, 24 P.3d at 595-596.   "As a

11   practical matter, an attorney is deemed to be dealing with a client when 'it may fairly be

12   said that because of other transactions an ordinary person would look to the lawyer as a

13   protector rather than as an adversary."  *Id.* at 149, 24 P.3d at 596 (internal quotations and

14   citations omitted).

15        The fact that Plaintiff sought legal advice from Mr. Sinas after 1996 and Mr. Sinas

16   seemingly provided such advice may be sufficient to form an attorney client relationship.

17   However, the Court finds that a question of fact remains regarding the extent of any

18   relationship between Mr. Sinas and Plaintiff after 1996.  In addition, the fact that Plaintiff

19   may have had an attorney client relationship with Mr. Sinas after 1996 and prior to 2010

20   does not establish that Plaintiff had knowledge of the extent of his attendant care benefits.

21        Defendant cites to *Hatch Companies Contracting, Inc. v. Arizona Bank*, 170 Ariz.

22   553, 826 P.2d 1179 (Ariz. Ct. App. 1991) for the proposition that Mr. Sinas' knowledge

23   of the extent of Plaintiff's attendant care benefits was imputed to Plaintiff.   However, the

24   court in *Hatch* addressed a client's knowledge that a *lis pendens* was executed and

25   recorded by counsel.  The court held that any knowledge on the part of counsel relating to

26   the propriety of recording the *lis pendens* was imputed to the attorney's client, if the

27   client was made aware by his counsel that he had filed the *lis pendens* and counsel had a

28   reason to know that the filing of the *lis pendens* was improper.   *Id.* at 559, 826 P.2d at

1185.

In this case, Plaintiff has submitted evidence demonstrating that Mr. Sinas submitted improper requests for benefits to Defendant during the initial year of his representation of Plaintiff.  As such, there is a question of fact as to whether Mr. Sinas had the requisite knowledge relating to Plaintiff's benefits to impute to his client.  *See* (Doc. 224-1 at p. 3) (Mr. Sinas confused replacement services with attendant care benefits, when replacement services were subject to a three year limit while attendant care benefits were not subject to such a time restriction).[1]

Accordingly, the Court agrees with Magistrate Judge Bowman that a determination on when Plaintiff's bad faith claim accrued for statute of limitations purposes, in accordance with the discovery rule, should be left to the trier of fact.  *See Doe*, 191 Ariz. at 323, 955 P.2d at 961 ("[w]hen discovery occurs and a cause of action accrues are usually and necessarily questions of fact for the jury.").

## V.   Defendant's Motion for Partial Summary Judgment on Plaintiff's Claims Re: Sixteen Hours Per Day of Attendant Care.  (Doc. 186).

Magistrate Judge Bowman recommended denying Defendant's Motion because there were genuine issues of material fact regarding Plaintiff's contract and bad faith claims relating to whether he was entitled to 16 hours of attendant care.

Defendant objects to Magistrate Judge Bowman's recommendation.  Specifically, Defendant argues that while Plaintiff submitted claim forms to Defendant for 16 hours of attendant care signed by his wife starting in 2011, both Plaintiff and his wife testified at

---

[1] Defendant further argues that Plaintiff should not be permitted to use the attorney client privilege as a shield preventing Defendant from gathering information on what information Mr. Sinas knew regarding Plaintiff's eligibility for benefits and what information he imputed to Plaintiff and also as a sword claiming that Mr. Sinas' representation of Plaintiff was minimal and Plaintiff was never provided with any information about the benefits available to him by Mr. Sinas.  This issue is not before this Court.  There is presently a motion pending before Magistrate Judge Bowman, requesting a further deposition of Plaintiff specifically related to his representation by Mr. Sinas and the extent of information related to his benefits that was imputed to Plaintiff by Mr. Sinas.   *See* (Doc. 308).

1   their depositions that she had not been providing him with 16 hours of attendant care per

2   day.  Further, Plaintiff's wife admitted she did not review the forms before signing them

3   and did not keep track of the time she spent providing services to Plaintiff.

4         As explained in the Report and Recommendation, in order for benefits to be

5   payable, "(1) the expense must have been incurred, (2) the expense must have been for a

6   product, service, or accomodation reasonably necessary for the injured person's care,

7   recovery, or rehabilitation, and (3) the amount of the expense must have been

8   reasonable."  *Moghis v. Citizens Inc. Co. of America*, 187 Mich.App. 245, 247, 466

9   N.W.2d 290, 247 (App. 1990).  (Doc. 348, p. 17).

10         Defendant acknowledges that Plaintiff submitted documentation demonstrating

11   that his wife was providing him with 16 hours of attendant care per day.  (Doc. 187-1 at

12   pp. 31-46).  While Plaintiff testified that he did not receive sixteen hours of attendant care

13   on a daily basis from his wife as specifically listed in the forms for reimbursement, *see*

14   (Doc. 220-2 at p. 63), his deposition further demonstrates that he had difficulty preparing

15   the forms and the amount of care he needed in a given day for a given task varied.  (Doc.

16   187-1 at pp. 15-29); (Doc. 220-2 at p., 63).  Further, Plaintiff testified that there were

17   days where he received more than 16 hours of attendant care and his wife was always on

18   call to provide assistance.  Accordingly, the Court agrees with Magistrate Judge Bowman

19   that viewing the evidence in a light most favorable to the non-moving party, there are

20   credibility issues and factual issues for the trier of fact to resolve relating to Plaintiff's

21   claim for 16 hours of daily attendant care.

22

23   **VI.   Defendant's Motion for Partial Summary Judgment Re: Alleged Hurdles to**
     **Plaintiff's Recovery of Benefits and Plaintiff's Claims for Bad Faith and Punitive**
24   **Damages.  (Doc. 188).**

25         In this Motion, Defendant argues that it is entitled to judgment as a matter of law

26   on several issues.  Each issue shall be addressed below.

27

28   *Failure to Advise*

- 16 -

1    Magistrate Judge Bowman concluded that since there is no statutory provision in

2  Michigan's No Fault Act requiring that an insurer explain benefits to its insured, the

3  failure to explain or advise Plaintiff about his benefits cannot result in a breach of

4  contract.  The parties have not raised any objections to this recommendation and it is

5  adopted.

6    Magistrate Judge Bowman further concluded that a failure to advise an insured

7  about the extent of his benefits and his rights under the policy in a non-misleading way

8  can support a claim of bad faith.  *See Nardelli v. Metropolitan Group Property and Cas.*

9  *Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (Ariz. Ct. App. 2012).   As such,

10  Magistrate Judge Bowman reasoned that there were issues of fact regarding Defendant's

11  explanation of benefits to Plaintiff that precluded summary judgment.

12    Defendant objects to this recommendation arguing that Plaintiff was represented

13  by counsel and his attorney, Mr. Sinas' knowledge of the extent of Plaintiff's benefits are

14  imputed to the Plaintiff.  Accordingly, it was reasonable for Defendant to assume that

15  Plaintiff had been properly advised of his benefits.

16    Even if the imputed knowledge of his attorney was sufficient to excuse

17  Defendant's failure to advise Plaintiff, the Court has previously addressed this argument

18  in relation to the statute of limitations for Plaintiff's bad faith claims and concluded that

19  there is a genuine question of fact regarding Plaintiff's relationship with Mr. Sinas after

20  1996 and any knowledge imputed to Plaintiff by Mr. Sinas.  Accordingly, Magistrate

21  Judge Bowman's recommendation related to this issue is adopted.

22

23  *Coordinated Care*

24    Magistrate Judge Bowman recommended granting Defendant partial summary

25  judgment on the issue of whether it acted properly by requiring Plaintiff to seek

26  reimbursement from his private health insurer before seeking benefits from Defendant.

27  Plaintiff has not objected to this recommendation and it is adopted.

28

*Reasonable and Customary Payment*

Magistrate Judge Bowman recommended granting Defendant partial summary judgment on the issue of whether it acted properly by paying providers "reasonable and customary" amounts for services rendered rather than the amounts actually billed. Plaintiff has not objected to this recommendation and it is adopted.


*Documentation*

Magistrate Judge Bowman recommended granting Defendant partial summary judgment on the issue of whether any of Plaintiff's claims were denied for failure to provide formal documentation. Plaintiff has not objected to this recommendation and it is adopted.


*Bad Faith*

Magistrate Judge Bowman recommended denying Defendant's Motion for Partial Summary Judgment on the issue of bad faith because there existed a genuine issue of material fact as to whether Defendant acted in bad faith in the handling of Plaintiff's claim. Defendant has not objected to this recommendation and it is adopted.


*Punitive Damages*

Magistrate Judge Bowman found that there was sufficient evidence from which the trier of fact could find punitive damages in this case and as such, recommended denying Defendant's Motion for Partial Summary Judgment regarding Plaintiff's punitive damages claim. Defendant objects to this recommendation.

In Arizona, an "insured may recover punitive damages on a bad faith claim." *Medical Protection Co. v. Pang*, 606 F.Supp.2d 1049, 1064 (D. Ariz. 2008) (citing *Walter v. Simmons*, 169 Ariz. 229, 818 P.2d 214, 225-26 (Ariz.Ct.App. 1991). However, in an insurance bad faith case, punitive damages may not be awarded "unless the evidence reflects 'something more than the conduct necessary to establish the tort.'"

*Rawlings*, 151 Ariz. at 162, 726 P.2d at 578 (finding that "plaintiff must prove that defendant's evil hand was guided by an evil mind") (citation omitted).  An evil mind may be found where the defendant intended to injure the plaintiff or where defendant "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others."  *Id.* "It has been stated that action justifying the award of punitive damages is 'conduct involving some element of outrage similar to that usually found in crime.'" *Id.* (citation omitted).

As such, "punitive damages will [only] be awarded on proof from which the jury may find that the defendant was 'aware of and consciously disregarded a substantial and unjustifiable risk that' significant harm would occur."  *Id.*  While sufficient to establish the tort of bad faith, an indifference to facts or failure to investigate are insufficient to establish punitive damages. *Id.*  To obtain summary judgment on the punitive damages issue, a defendant must show that no reasonable jury could find the requisite evil mind by clear and convincing evidence. *Holy Trinity Greek Orthodox Church v. Church Mut. Ins. Co.*, 476 F.Supp.2d 1135, 1140 (D. Ariz. 2007) (citing *Thompson v. Better-Bilt Aluminum Products Co., Inc.,* 171 Ariz. 550, 832 P.2d 203, 211 (Ariz.1992)).

Based on the evidence submitted in this case and viewed in a light most favorable to the Plaintiff, the Court finds that there is sufficient evidence from which a jury could find punitive damages by clear and convincing evidence.

**VI.    Conclusion**

The recommendations of Magistrate Judge Bowman are adopted.   Plaintiff's contract claim is to be construed in accordance with Michigan law and as such, the one-year back rule limits his contract damages to one year prior to filing.  Plaintiff's bad faith claim shall be construed in accordance with Arizona law and genuine issues of material fact remain as to whether the discovery rule tolls Arizona's two year statute of limitations on Plaintiff's bad faith claim.

Additionally, genuine issues of material fact remain on Plaintiff's contract and bad

faith claims related to his entitlement to 16 hours of attendant care and Defendant's failure to advise Plaintiff of the extent of his benefits in good faith.  However, there are no genuine issues of material fact and partial summary judgment is granted in relation to any claims related to coordinated care, reasonable and customary payment or a failure to provide documentation as referenced in this Order and the Report and Recommendation. Finally, partial summary judgment related to Plaintiff's bad faith claim and punitive damages claim is denied.

Accordingly, IT IS ORDERED:

1.      The Report and Recommendation is ADOPTED.  (Doc. 348).

2.      Defendant's Motion for Partial Summary Judgment Re: Contract and Bad Faith Claims, (Doc. 108), is GRANTED IN PART.

3.      Defendant's Motion for Partial Summary Judgment Re: Sixteen Hours Per Day of Attendant Care, (Doc. 186), is DENIED.

4.      Defendant's Motion for Partial Summary Judgment Re: Alleged "Hurdles" to Plaintiff's Recovery of Benefits and Plaintiff's Claims for Bad Faith and Punitive Damages, (Doc. 188), is GRANTED IN PART.

5.      Defendant's Motion for Leave to File a Reply, (Doc. 354), is DENIED.

Dated this 30th day of June, 2014.

_____
Cindy K. Jorgenson
United States District Judge